In the

# United States Court of Appeals

### For the Seventh Circuit

---

No. 25-2054

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MONA GHOSH,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:23-cr-00140 — **Franklin U. Valderrama**, *Judge.*

---

ARGUED MAY 14, 2026 — DECIDED JULY 31, 2026

---

Before RIPPLE, SCUDDER, and ST. EVE, *Circuit Judges.*

RIPPLE, *Circuit Judge*. Mona Ghosh pleaded guilty to two counts of health care fraud. She had practiced medicine in the fields of obstetrics and gynecology and, in the course of her work, she had billed insurance providers for services which she did not provide or which were not medically necessary. In this appeal, she contends that the district court erroneously denied her a sentence reduction for accepting responsibility, erroneously applied a sentence enhancement for conscious or

reckless risk of serious bodily injury, and imposed a substantively unreasonable 120-month sentence. For the reasons set forth in this opinion, we affirm the judgment of the district court.

## I

## BACKGROUND

### A

Dr. Ghosh formerly practiced as an obstetrician-gynecologist in Hoffman Estates, Illinois. She owned and operated Progressive Women's Healthcare, S.C. From February 2018 to April 2022, she participated in a scheme to defraud health care benefit programs, including Medicaid and Tricare. She submitted, and caused her employees to submit, fraudulent claims for procedures and services which were not provided or which were not medically necessary. These claims included charges for telemedicine visits when Dr. Ghosh did not speak to the patient but left only a voicemail, for office visits and procedures where Dr. Ghosh did not see the patient, and for procedures that were medically unnecessary or predicated on false diagnoses. She was reimbursed for $7,888 for fraudulent claims for in-office visits when she was on vacation outside of Illinois, $793,716 for improperly billed telemedicine visits, and $1,677,346 for unnecessary medical procedures and tests. Those unnecessary procedures included, as relevant here, endometrial ablations.

### B

Initially facing an indictment containing thirteen counts of health care fraud, Dr. Ghosh pleaded guilty to two of those counts pursuant to a plea agreement. These two counts alleged that Dr. Ghosh had submitted a claim to the Tricare

health care benefit program for a telemedicine visit she did not provide as billed and that she submitted a claim to Tricare for lab testing that was not medically necessary. Other counts in the indictment had alleged, among other things, that Dr. Ghosh performed endometrial ablations that were not medically necessary.[1]

During her change-of-plea hearing, Dr. Ghosh made a series of statements upon which the district court would eventually rely to support its decision to deny an acceptance-of-responsibility sentencing reduction. At the hearing, when the court asked Dr. Ghosh if she agreed with the Government's recitation of the facts, she said:

> Your Honor, I am technically challenged and I — just with the medical part of my billing. The billing was given to somebody else who is now sitting in India, and completely attended by him. So I am the doctor and I am the physician responsible, but it is, I believe, my responsibility, which is why I'm saying I am guilty, but it was obtained by my office under my name.[2]

The court asked Dr. Ghosh if the facts in the written plea agreement were true. She replied:

> The billing was done by my office and my appointed people and it is my responsibility, your Honor for, you know, billing this, and I'm terribly sorry for what has been billed by them. I, as a solo OB-GYN, … I was completely focused on

---

[1] R.1 at 5, 14, 15.

[2] R.107 at 43:17–23.

patients and taking care of them. I know when you go home and then you have to run again for a delivery at midnight, I didn't have the time to look into billing. And I completely, stupidly, completely depended on people to input charges and send for billing ….[3]

The court told Dr. Ghosh that she would have an opportunity to provide her perspective on "how things happened" at the sentencing hearing, and at the change-of-plea hearing she needed to state whether the facts in the plea agreement were true or not. When asked if she disagreed with any facts, she said:

No. I take complete responsibility for whatever billing was sent from my office and because I am the physician and I am the responsible person and I should have … been more strict about looking into billing and everything. It is totally my responsibility, your Honor, which is why I am pleading guilty.[4]

About two months after Dr. Ghosh pleaded guilty, the State of Illinois filed a professional complaint against her. The Illinois Department of Financial and Professional Regulation (Department of Professional Regulation) filed a complaint seeking to have Dr. Ghosh's physician's license revoked. The complaint cited paragraphs from the plea agreement in which

---

[3] *Id.* at 45:03–11.

[4] *Id.* at 46:17–24.

she admitted to "knowingly submitt[ing] fraudulent claims … for medically unnecessary procedures and tests …."[5]

Dr. Ghosh hired a civil attorney, who was not representing her in her criminal case, to represent her before the Department of Professional Regulation. Her answer to the professional complaint directly cited the plea agreement but made multiple denials of the facts as stated in that agreement. As to one paragraph from the plea agreement, Dr. Ghosh admitted to the allegation that she "knowingly submitted or caused to be submitted fraudulent claims to the [insurance programs]."[6] But, "[a]nswering further," Dr. Ghosh explained that she "did not do the billing herself. She hired an outside entity to do the medical billing for her, namely KG Patel."[7] Attached to her answer was an electronically signed verification. It shows that Dr. Ghosh received the answer from her attorney, then electronically signed the answer sixteen seconds after she opened the file.

Dr. Ghosh's sentencing hearing took place over two days, and her sentence was imposed the next month. At the sentencing hearing, the district court heard testimony from Dr. Ghosh's former patients (including one patient who also worked as her medical assistant) and from two expert witnesses. The patients testified that they had reviewed their own patient files and that those files contained false statements about their medical histories and symptoms.

---

[5] Appellant's App. 35.

[6] *Id.* at 35, 39.

[7] *Id.* at 39.

At least some of those false statements were in Dr. Ghosh's handwriting, according to one of the patients who also worked as Dr. Ghosh's medical assistant. She testified that she witnessed Dr. Ghosh circle the billing and diagnoses codes on each "encounter form" which was filled out for each patient visit. She saw Dr. Ghosh select diagnoses codes for pelvic pain, irregular bleeding, and menorrhagia (heavy bleeding) more often than other codes. She also witnessed Dr. Ghosh send out samples for testing and billing even when a biopsy was obviously unsuccessful and could not provide any biopsy results. Repeated biopsies happened "often."[8]

Patients testified that they received medical procedures they did not know about or want. For example, one patient testified that she expected to receive during an appointment a hysteroscopy (in which the physician uses a scope to visualize the uterus), a biopsy, and an insertion of an intrauterine device (IUD) to thin the endometrial lining. Among the procedures she received, however, was an endometrial ablation. An endometrial ablation destroys the endometrial lining to treat abnormal uterine bleeding. This procedure is irreversible. Both expert witnesses testified that an endometrial ablation is not advisable if the patient wants to become pregnant or has cancer or pre-cancer.

Four patients who testified at the sentencing hearing said that Dr. Ghosh performed endometrial ablations on them, either without consent or by coercing them into consenting. Although the patients signed consent forms, which explained that one of the procedures they would undergo was the endometrial ablation, they testified that they had not consented.

---

[8] R.91 at 36:08–09.

One patient testified that she was pressured into accepting the procedure; another testified that Dr. Ghosh covered up the portion of the form that mentioned the ablation before she signed it; another testified that her signature was forged; and another testified that the mention of the ablation was added to the form after she signed it.

Dr. Sarah Wagner, the Government's expert, testified on medical explanations and procedures. However, she did not review the patients' medical records, interview the patients, or opine on the appropriateness of the patients' ablations.

Dr. Patrick Pozzi testified as Dr. Ghosh's expert. He reviewed the patients' files. He testified that he relied on the accuracy of the files and that his opinion might differ if the medical records were inaccurate. He testified that two of the four patients who received ablations were good candidates for ablations. He was not asked whether an ablation was appropriate for the other two patients.

After the experts testified, over a dozen former patients presented victim impact statements. The parties presented their arguments on the 18 U.S.C. § 3553(a) factors, and Dr. Ghosh addressed the court.

## C

At the final sentencing hearing, the district court addressed two issues relevant to this appeal and imposed its sentence.

The district court applied a two-level enhancement for conscious or reckless risk of death or serious bodily injury under Guideline § 2B1.1(b)(16). Although § 2B1.1(b)(16) does not define what constitutes a conscious or reckless risk of serious bodily injury, we have held that recklessness "reflects a

mental state in which a defendant was aware of the risk created by her conduct and the risk was of such a nature and degree, that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation."[9] The district court summarized in detail the sentencing hearing's testimony. It concluded that the Government showed that Dr. Ghosh "had a pattern of performing endometrial ablations that did not conform to the standard of care; that is, they were not medically necessary or were performed without informed consent …."[10] It was "reckless" to perform the ablations without the patients' knowledge or consent and then to accept payments for the procedures.[11]

Next, the court determined that Dr. Ghosh was not entitled to a reduction for accepting responsibility under Guideline § 3E1.1. Dr. Ghosh bore the burden of proving acceptance of responsibility by a preponderance of the evidence. The court decided that her response to the Department of Professional Regulation's complaint in which she denied conduct to which she had admitted in the plea agreement prevented the conclusion that she had accepted responsibility. The court also relied on Dr. Ghosh's blaming her civil attorney for filing a rote response reciting that Dr. Ghosh had hired KG Patel to handle medical billing. "Such a deflection could not have come merely from an attorney with no knowledge of the case

---

[9] R.95 at 467:06–10 (citing *United States v. Mohsin*, 904 F.3d 580, 584 (7th Cir. 2018)).

[10] *Id.* at 470:22–25.

[11] *Id.* at 471:18.

merely following a form response."[12] The court also noted Dr. Ghosh's answers during the change-of-plea hearing where she made "repeated efforts to deflect blame for the billing in this case."[13]

The court determined that Dr. Ghosh's total offense level was 30, which yielded a Guidelines range of 97 to 121 months' imprisonment. The court then analyzed the § 3553(a) factors, beginning with the nature and circumstances of the offense. The court characterized her offense as "serious" because she did "not merely bill insurance companies for services that [she] did not provide …."[14] The "heart" of the case was not billing fraud but the "women, mothers, sisters, daughters," who wanted to become pregnant but could not because of the ablations.[15] The court determined that Dr. Ghosh's history and characteristics were "neutral."[16] She had no criminal history and was a nonviolent offender who had a difficult childhood and had experienced abuse from a family member. She excelled in school and became an obstetrics and gynecology physician after becoming a naturalized citizen. She received "numerous" letters of support.[17] But she used the money from her fraudulent billing to "support [her] lifestyle, including multiple tens of thousands of dollars in luxury brand

---

[12] *Id.* at 475:20–22.

[13] *Id.* at 477:04.

[14] *Id.* at 483:14, 483:21–22.

[15] *Id.* at 484:16–20.

[16] *Id.* at 489:07.

[17] *Id.* at 490:10–11.

purchases."[18] The court then concluded that a 120-month sentence with two years of supervised release was appropriate.

## II

## DISCUSSION

### A

Dr. Ghosh first contends that the district court should have granted her a reduction in her offense level for accepting responsibility under § 3E1.1. A district court's denial of a reduction for accepting responsibility under § 3E1.1 is a factual finding subject to clear error review.[19]

"A defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility, but the fact that a defendant's challenge is unsuccessful does not necessarily establish that it was either a false denial or frivolous." U.S. SENT'G GUIDELINES MANUAL § 3E1.1 cmt. 1(A) (U.S. SENT'G COMM'N 2018). The district court is "better equipped to 'assess whether a particular defendant is motivated by genuine acceptance of responsibility or by a self-serving desire to minimize his own punishment.'" *United States v. Major*, 33 F.4th 370, 382 (7th Cir. 2022) (quoting *United States v. Cunningham*, 103 F.3d 596, 598 (7th Cir. 1996)). When making this finding, "the sentencing judge is required to look beyond formalistic expressions of culpability and to determine whether the defendant has manifested an acceptance of personal responsibility for his offense in a moral sense." *Id.*

---

[18] *Id.* at 493:02–03.

[19] *United States v. Robinson*, 942 F.3d 767, 770 (7th Cir. 2019) (citation modified).

(quoting *Cunningham*, 103 F.3d at 598). "Attempting to minimize one's level of involvement in an offense is sufficient to deny a reduction for acceptance of responsibility, even when the defendant has pleaded guilty." *Id.* (citation modified).

Dr. Ghosh makes multiple arguments to support her contention that the district court should have applied the reduction. None carry the day.

## 1

Dr. Ghosh first points out the actions that she believes demonstrate that she took responsibility: she pleaded guilty to two counts; agreed to the Government's factual recitation in the plea agreement; complied with all pretrial conditions; and reflected her remorse and acceptance in her allocution statement. However, pleading guilty and complying with probation requirements do not necessarily render clearly erroneous the district court's determination that a defendant did not accept responsibility. *See id.* ("[P]leading guilty does not entitle a defendant to a reduction for acceptance of responsibility."). The district court was on solid ground when it determined that Dr. Ghosh shifted responsibility away from herself during her statements she made to the court. Dr. Ghosh said at her change-of-plea hearing, "[t]he billing was given to somebody else who is now sitting in India, and completely attended by him."[20] At her allocution, she took it a step further, suggesting that her fraudulent billing "happened gradually" as a result of "[c]hoosing patient care over paperwork."[21] She said she "didn't fully understand

---

[20] R.107 at 43:19–20.

[21] R.94 at 441:22–24.

computers" and was "[t]otally depending on billing."[22] She said she did not "want to give any excuses" but then immediately said that she "assumed that others would catch what I missed."[23] In stark contrast, her former medical assistant testified that Dr. Ghosh would circle, by hand, the billing and diagnoses codes on each "encounter form" that was filled out for each patient visit.

Dr. Ghosh contends that the court misconstrued her statements as attempts to avoid responsibility instead of arguments in mitigation. *Cf. United States v. Robinson*, 942 F.3d 767, 771 (7th Cir. 2019) (reversing the district court's denial of a reduction for acceptance of responsibility because the defendant had made a statement "in mitigation of the seriousness of [his] offense" and not to "disclaim[] responsibility"). Here, however, Dr. Ghosh's statements were not reasons explaining why she committed billing fraud. She repeatedly stated that the fraudulent billing was done by other individuals and that her responsibility was limited to failing to appoint trustworthy billing staff and to supervise that staff.[24]

Dr. Ghosh also points out that her inconsistent statements before the district court were raised for the first time by the

---

[22] *Id.* at 441:24–442:01.

[23] *Id.* at 442:02–03.

[24] Dr. Ghosh points out in her reply brief that her plea agreement states she "submitted or *caused to be submitted* fraudulent claims." R.33 at 3, 5, 6 (emphasis added). Therefore, pointing out that another person handled billing for her was not inconsistent with her plea agreement. However, other admissions in the plea agreement state that she "submitted fraudulent claims" herself. *Id.* at 4, 5, 6. And her former medical assistant testified that Dr. Ghosh "always" circled, by hand, the billing codes on each of the patients' encounter forms. R.91 at 32:18.

court when it announced her sentence. She relies upon *United States v. Jackson*, 32 F.3d 1101, 1105 (7th Cir. 1994), where we explained that Federal Rule of Criminal Procedure 32(a)(1) "requires that the court afford the parties 'an opportunity to comment upon the probation officer's determination and on other matters relating to the appropriate sentence.'" But Dr. Ghosh agrees that her change-of-plea hearing was her opportunity to demonstrate that she took "complete responsibility."[25] By making statements meant to "manifest[] acceptance,"[26] she knew that the district court would consider them when determining whether she had accepted responsibility. The district court is "due great deference because [it] is in a unique position to evaluate a defendant's words and demeanor in order to determine his acceptance of responsibility." *United States v. Seidling*, 737 F.3d 1155, 1162 (7th Cir. 2013). That the district court listened to Dr. Ghosh's statements and drew a conclusion opposite from the one she now urges upon us does not justify resentencing.

**2**

Dr. Ghosh also contends that the district court gave too much weight to her filing before the Department of Professional Regulation. She emphasizes that her answer to the Department's allegations was drafted by a civil attorney whom she retained the same day she received the complaint. She recounts that she reviewed the drafted answer for only sixteen seconds before signing it. Dr. Ghosh furthermore takes issue

---

[25] *See* Appellant's Br. 16 ("At the plea hearing, Dr. Ghosh acknowledged her guilt … [s]he twice responded that she took 'complete responsibility.'" (quoting R.107 at 46:17–24)).

[26] *Id.*

with the district court's decision to cite specifically a sentence from the answer in which she stated that KG Patel handled billing for her. In her view, the court should have considered the entire drafting process of the answer or asked whether Dr. Ghosh understood that the answer was inconsistent with her criminal plea agreement.

Dr. Ghosh's claim that she was denied the opportunity to develop the record as to how her answer came about is unconvincing. Dr. Ghosh made multiple statements across multiple hearings before the district court in which she downplayed her culpability. The Government raised the Department of Professional Regulation answer in its sentencing memorandum. Dr. Ghosh's response did not address the answer at all. And the Government raised the answer again in its response to her sentencing memorandum. The district court did not err when it considered her Department of Professional Regulation answer in denying her a reduction for accepting responsibility or in determining her ultimate sentence.

**B**

Dr. Ghosh next contends that the district court erred by applying the two-level enhancement under § 2B1.1(b)(16) for conscious or reckless risk of serious bodily injury because it failed to resolve conflicting expert testimony and misapplied the recklessness standard. We review a district court's decision to apply the § 2B1.1(b)(16) enhancement for clear error as to the factual findings and de novo as to the legal conclusions,

including the interpretation of the phrase "reckless risk of serious bodily injury."[27]

Section 2B1.1(b)(16)(A) provides for a two-level increase if the offense involved the conscious or reckless risk of death or serious bodily injury. The text of the enhancement "does not define what constitutes 'the conscious or reckless risk of death or serious bodily injury.'" *United States v. Mohsin*, 904 F.3d 580, 584 (7th Cir. 2018). We have affirmed the imposition of the enhancement "[i]n a mail fraud case involving false billings for medical procedures to insurance companies …." *Id.* (citing *United States v. Vivit*, 214 F.3d 908, 920–22 (7th Cir. 2000)).

In *Vivit*, a jury convicted a physician of sixteen counts related to false insurance billing. The jury heard from patients who testified that they had serious medical problems, but that Vivit failed to test or examine them. 214 F.3d at 912. At sentencing, the district court applied the two-level enhancement. In affirming that decision, we explained that the Guidelines employ the phrase "serious bodily injury" to mean "injury involving extreme physical pain or the protracted impairment of a function of a bodily … organ[;] or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." *Id.* at 920 (quoting U.S. SENT'G GUIDELINES MANUAL § 1B1.1 application n. 1(j) (U.S. SENT'G COMM'N 2018)). We upheld the enhancement because Vivit failed to perform physical examinations on patients who consulted him after car accidents. This lapse "created a risk that, had these patients suffered serious injuries, their injuries would

---

[27] *United States v. Vivit*, 214 F.3d 908, 920 (7th Cir. 2000).

remain untreated," and Vivit acted recklessly in ignoring that risk. *Id.* at 922.

Here, Dr. Ghosh centers her arguments about this enhancement on the conflicting testimony at the sentencing hearing. She claims the district court wrongly credited patient testimony over her expert's testimony. The only expert to testify as to whether the ablations were medically appropriate was her expert, Dr. Pozzi, and he testified that at least two of the ablations were appropriate. Dr. Ghosh maintains that the district court erred because it did not make "specific findings about the reliability of" patient claims that the consent forms were blank or not explained, instead "effectively dismiss[ing] Dr. Pozzi's testimony."[28]

Evaluating the evidence posed a more complex task for the district court than the one suggested by Dr. Ghosh's argument. Whether a patient was adequately *informed* as to a procedure is a separate consideration from whether the procedure would be *medically beneficial* to the patient. On this latter question, the experts' testimony was no doubt of some value. But Dr. Wagner, the Government's expert, did not review the patients' files or opine on the medical necessity of the ablations. And although Dr. Pozzi did render such opinions, he admittedly based his testimony on the assumption that the files he reviewed were accurate. Notably, both agreed that endometrial ablations are contraindicated if a patient is at risk for cancer or wishes to be pregnant. On the other hand, some of the lay testimony was of significant value on whether the patients were adequately informed of the risks attendant to the various proposed procedures. For instance, Dr. Ghosh's

---

[28] Appellant's Br. 18.

former assistant testified that Dr. Ghosh was "very persuasive, intimidating almost," in her attempts to convince patients to have ablations and that Dr. Ghosh would tell patients that ablations "can prevent endometrial cancer in a way …."[29]

Dr. Pozzi was the only expert to testify on whether the ablations for at least two of the patients were medically appropriate, and he said they were. Yet the patients testified that they were not informed that they would receive ablations. At least two patients testified that at the times when they underwent the ablations, they were still hoping to bear children. In short, whether the ablations were appropriate depended not only on an expert's determination of the risks and benefits of a medical procedure, but also on the patient's informed consent of the consequences of undergoing such a procedure. Even if the ablations were a medically permissible option, subjecting patients to this procedure nevertheless placed them at risk of serious complications resulting from surgery. Indeed, one patient here did suffer such a complication. This patient was diagnosed with post-ablation syndrome by another obstetrician-gynecologist and consequently underwent a hysterectomy to treat her constant pain. She did not consent to the ablation and had told Dr. Ghosh that she did not want to eliminate her chance of becoming pregnant in the future.

Our review of the record convinces us that the district court carefully assessed the testimony of the patients and of Dr. Pozzi. The court was justified in concluding that many procedures performed by Dr. Ghosh were not necessary and, in multiple cases, there was no informed patient consent.

---

[29] R.91 at 42:24–25, 43:06–07.

Dr. Ghosh also submits that the district court "blurred the line between malpractice-type issues (e.g., lapses in documentation or communication) and the high threshold of criminal recklessness."[30] While the patients uniformly testified that they received the ablations unknowingly or unwillingly, Dr. Ghosh argues that their testimony was based on "recollections that they did not fully understand the procedures or that they believed forms were blank."[31]

We defer to the trial judge "on issues relating to the credibility of witnesses who testified before him." *United States v. Stokes*, 211 F.3d 1039, 1045 (7th Cir. 2000). The district court noted that Dr. Pozzi testified that he relied on the accuracy of the patients' records and if the information contained in them was inaccurate, his opinion might be different. The patients testified that the information in their records was inaccurate. The district court noted that the patients did not know they were consenting to or undergoing the ablations. On that basis, the district court concluded that it was "reckless" to perform ablations without patient knowledge or consent and then to accept payments for that procedure.[32] The district court properly concluded that Dr. Ghosh engaged in the reckless risk of serious bodily injury so that it constituted a "gross deviation from the standard of care that a reasonable person would exercise in such a situation." *Mohsin*, 904 F.3d at 584 (citation modified).

---

[30] Appellant's Br. 19.

[31] *Id.*

[32] R.95 at 471:16–18.

Dr. Ghosh lastly contends that the district court over-relied on patient testimony without adequate corroboration. She contends that the patients' testimony was not reliable because it was never "meaningfully reconciled with the medical records or the signed consent forms that underpinned Dr. Pozzi's testimony."[33] She cites *United States v. Greene*, 71 F.3d 232, 236 (6th Cir. 1995). There, the defendant pleaded guilty to ten counts of fraud relating to his practice of assuming false identities to obtain jobs in the health care field. *Id.* at 234. The district court applied the enhancement for serious risk of bodily harm because it found that he fraudulently obtained a position as a physician's assistant. The only evidence in the record that discussed Greene's work as a physician's assistant was a single, conclusory paragraph in his presentence report. *Id.* at 236. That paragraph was based on an FBI report that Greene "was not allowed to review." *Id.* As a result, the Sixth Circuit determined that the district court erred by failing to ensure that the FBI report was reliable or require the Government to provide other evidence in support of the enhancement.

Here, however, the district court applied the enhancement after four former patients, one former medical assistant, and two experts testified. As detailed above, the district court provided thorough, detailed reasons for applying the enhancement. The court was entitled to make credibility determinations of the witnesses and did not clearly err in the determinations it made.

---

[33] Appellant's Br. 20.

## C

Dr. Ghosh lastly asserts that her 120-month sentence was substantively unreasonable because the district court placed disproportionate weight on the harm to her patients and insufficient weight on her mitigating factors.

We review the substantive reasonableness of a district court's sentence, in the absence of procedural error, for abuse of discretion.[34] As an appellate court, we may presume that a sentence within the Guidelines range is reasonable. *Nelson v. United States*, 555 U.S. 350, 352 (2009) (per curiam) (citing *Rita v. United States*, 551 U.S. 338, 351 (2007)). A defendant may rebut that presumption by demonstrating that her "sentence is unreasonable when measured against the factors set forth in § 3553(a)." *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). A "sentencing court's consideration of a defendant's non-frivolous arguments in favor of mitigation certainly may be brief, but it must also be meaningful." *United States v. Robertson*, 662 F.3d 871, 880 (7th Cir. 2011). "The mere fact [a defendant] weighs [the § 3553(a)] factors differently does not transform the district court's decision into an abuse of discretion." *United States v. Wood*, 31 F.4th 593, 601 (7th Cir. 2022).

Dr. Ghosh submits that the district court overemphasized the harm suffered by the patients, which "pushed the sentence towards the top of the range as though this were a case of violent harm rather than fraud."[35] But the district court recognized her attorney's argument that the case was about health care fraud. It stated, however, that she "did not merely

---

[34] *United States v. Aljabari*, 626 F.3d 940, 950 (7th Cir. 2010).

[35] Appellant's Br. 22.

bill insurance companies for services that [she] did not provide."[36] She defrauded programs like Medicaid, which made it "harder for low-income individuals to obtain quality health care."[37] And "most of [her] fraudulent claims are tied to actual procedures or care that [she] unnecessarily gave these patients, the most serious of which is the endometrial ablation."[38] Preventing her patients from becoming mothers made the offense "more serious than a standard health care fraud case."[39]

The court took note of her lack of a criminal history, that she was a nonviolent offender, that she had a difficult childhood, and that she excelled in school despite her challenging upbringing. The court also noted that she served as a physician for low-income patients and that the court had read the "numerous letters of support submitted" on her behalf.[40] The court highlighted specific comments made in the letters that praised Dr. Ghosh. But the court gave less weight to these mitigating factors because at some point in her career, her motivation shifted from "providing excellent patient care" to her "greed."[41]

The district court's sentence was not substantively unreasonable. The court was entitled to weigh patient harm more strongly than the mitigating support letters and personal

---

[36] R.95 at 483:21–22.

[37] *Id.* at 484:08–09.

[38] *Id.* at 484:13–16.

[39] *Id.* at 484:19–20.

[40] *Id.* at 490:10–11.

[41] *Id.* at 492:21–24.

history of Dr. Ghosh. The transcript evinces a thorough consideration of both the nature of the offense and the mitigating factors. Despite beginning her career trying to help individuals obtain needed health care, Dr. Ghosh turned to fraudulent billing in a shift toward her own personal interests.

### Conclusion

The judgment of the district court is affirmed.

AFFIRMED